## Tioga Pipe Supply Co., Inc. v. Savlov

*Robert E. Enders,* for plaintiff.

*Arthur L. Goldberg, Goldberg, Evans & Katzman, Reynold J. Kosek,* Assistant Attorney General, and *William C. Sennett,* Attorney General.

SHELLEY, J., August 12, 1969.—This matter is before us on the petition of defendant, Harry Savlov (hereinafter referred to as "Savlov"), to dissolve a fraudulent debtor's attachment writ issued by plaintiff, Tioga Pipe Supply Co., Inc. (hereinafter referred to as "Tioga"), pursuant to Rule 1285, et seq., of the Pennsylvania Rules of Civil Procedure. Pursuant to Savlov's petition, a rule was "granted upon the plaintiff, Tioga Pipe Supply Co., Inc., to show cause why

the attachment issued in this case should not be dissolved." Subsequently, an order was made allowing Tioga to file an amended complaint, to which Savlov filed an amended petition to dissolve the attachment. Tioga thereupon filed an answer to Savlov's amended petition to dissolve the attachment. Defendant, Micco, also filed an answer to the petition to dissolve the attachment.

Sometime prior to April 22, 1965, defendant, Savlov, received an award from the Commonwealth of Pennsylvania, Department of Property and Supplies, for the purchase of 1,750 pieces of three-inch steel pipe and other materials, for a total price in the amount of $31,620.

On May 12, 1965, Savlov entered into a contract with Tioga for the purchase of those items covered by the Commonwealth's award at and for the price of $34,570, which was $2,950 more than the amount Savlov was to receive from the Commonwealth for the pipe and other materials.

In early June of 1965, Tioga, pursuant to its contract with Savlov, shipped the goods and materials to the Commonwealth of Pennsylvania, Traffic Engineering Bureau, Sign Section, in Harrisburg, and forwarded its invoices to Savlov for the total amount of $34,570.

On or about June 18, 1965, Savlov, by increasing the discount available to the Commonwealth, received from the Commonwealth the discounted amount of his contract, $30,943.37, which made the amount received by Savlov from the Commonwealth $3,626.63 less than the amount he had agreed to pay Tioga for the steel pipe and other materials.

Savlov testified that after he received the money from the Commonwealth for the pipe and other materials, he went to Calgary, Canada, where he remained for about three weeks. While in Calgary he deposited

in a Calgary bank approximately $18,000 of the money he had received from the Commonwealth in payment of the pipe and other materials which he had purchased from Tioga. Savlov then transferred the money which he had deposited in the Calgary bank to his wife's account in a Harrisburg bank. Savlov then sent Tioga a check drawn on the wife's account in the amount of $24,000 and made a notation on the check "payment in full" as settlement for his account with Tioga. Tioga struck out the words "payment in full" and presented the check for payment. The Harrisburg bank refused to honor the check because it had not been signed by the wife, on whose account the check had been drawn. Subsequently, Savlov's wife signed the check so that Tioga, in August 1965, received $24,000 of the money due it from Savlov. This left a balance due Tioga from Savlov of $10,570.

In June of 1966 it appears that the Commonwealth had an amount in excess of $24,000 due to Savlov for materials purchased from him other than the materials supplied Savlov by Tioga. It was this fund against which Tioga issued the fraudulent debtor's attachment writ, which is the subject of this proceeding. By stipulation, funds in excess of $11,000 were released from the attachment.

In support of his amended petition to dissolve the attachment, Savlov made three averments which are: (1) That the instant facts do not fall within the grounds for fraudulent debtor's attachment as provided in Pa. R. C. P. 1286; (2) that the property attached, being in the possession of the Commonwealth of Pennsylvania, is not subject to attachment, since the Commonwealth is not included among those whom the rules include as a potential garnishee; and (3) that the debt attached is not the property of Savlov, but rather belongs to his employer, M.

Glosser and Sons, Inc., and is, therefore, not subject to attachment in this action.

The grounds for fraudulent debtor's attachment are provided in Pa. R. C. P. 1286, as follows:

"A fraudulent debtor's attachment may be issued to attach personal property of the defendant within the Commonwealth and not exempt from execution, upon any cause of action at law or in equity in which the relief sought includes a judgment or decree for the payment of money, when the defendant with intent to defraud the plaintiff

"(1) has removed or is about to remove property from the jurisdiction of the court;

"(2) has concealed or is about to conceal property;

"(3) has transferred or is about to transfer property; or

"(4) has concealed himself within, absconded, or absented himself from the Commonwealth."

There is no doubt in our opinion that Savlov intended to defraud Tioga. The acts committed by Savlov constitute all of the necessary grounds to support a fraudulent debtor's attachment.

There is no merit to the issue raised by Savlov that the money attached is not the property of Savlov but rather belongs to his employer. If the money did belong to the employer as testified to by the employer, it was the employer's duty to intervene in the fraudulent debtor's attachment so that the ownership of the money could be determined: Golder v. Bogash, 329 Pa. 350 (1938). This the employer failed to do.

We are, however, confronted with the averment of Savlov that the property attached being in the possession of the Commonwealth is not subject to a fraudulent debtor's attachment. As a general rule the United States, the States and their political subdivisions and agencies cannot be summoned as garnish-

ees in any action without statutory authorization or consent or waiver, and the Pennsylvania courts have applied the general rule to prohibit attachment of property in the possession of the Commonwealth or the various subdivisions and agencies thereof: Central Contracting Company, v. C. E. Youngdahl & Company, Inc., 418 Pa. 122, 126 (1965).

The rationale behind the general rule as stated first in Bulkley v. Eckert, 3 Pa. 368, 369 (1846), is that:

"Great public inconvenience would ensue, if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment, and trouble that would ensue, from being stopped in the routine of their business, compelled to appear in court, employ counsel, and answer interrogatories, as well as take care that the proceedings are regularly carried on, and bail to return duly given."*

In City of Erie v. Knapp, 29 Pa. 173 (1857), the court said, on page 174:

" 'If a precedent of this kind were set, there seems no reason why the state or county treasurers, or other fiscal officers of the Commonwealth, or of municipal bodies may not be subject to the levying of attachments, which has never been attempted, nor supposed to come within the attachment law:' Buckley (sic) v. Eckel, 3 Barr 368.

"An execution attachment is often substantially but the commencement of the suit; and it always imposes upon the garnishee duties and obligations of a somewhat difficult character to perform. He must appear to the writ and answer the interrogatories propounded. He may not pay the money to the original creditor after notice of the attachment, nor can he safely pay it to the attaching creditor pending the litigation. If

---

* In Bulkley, supra, the Supreme Court held that money in the hands of a school board treasurer, owing to a teacher, could not be attached by the teacher's judgment creditor.

the debt has been assigned with notice to the garnishee before the attachment, he must either notify the assignee of the attachment, or plead the assignment in bar of the attachment; and if he is summoned by foreign attachment, he cannot even after judgment safely pay the debt to the attaching creditor, until bail to return has been duly given.

"The performance of public duties is sufficiently difficult on the part of fiscal officers, without further complicating them by requiring such officers to become parties to questions and rights litigated in our courts of justice."

This general rule is applicable whether the State or municipal corporation is operating in a governmental or a proprietary capacity: Richter v. George Doherty Lumber Co., 16 D. & C. 2d 181, 184 (1958).

The Supreme Court has held certain governmental bodies to be subject to attachment. In Haines v. Lone Star Shipbuilding Co. and United States Shipping Board Emergency Fleet Corporation, Garnishee, 268 Pa. 92 (1920), the Emergency Fleet Corporation, incorporated under the laws of the District of Columbia pursuant to the authority given to the Shipping Board under the Federal Shipping Act of September 7, 1916 was subject to a writ of foreign attachment issued from a State court. The Supreme Court also held in Central Contracting Company, Appellant, v. C. E. Youngdahl & Company, Inc., supra, that a housing authority organized pursuant to the Housing Authorities Law of May 28, 1937, P. L. 955, 35 PS §1541, et seq., could be summoned as a garnishee in foreign attachment proceedings. These two cases can be distinguished from those holding to the general rule in that in both cases the activities engaged in by the corporations have the aspect of large scale private commercial enterprises and in the course of these

activities, deal extensively with the private commercial world. See page 128 of Central Contracting Company v. Youngdahl, supra, and page 100 of Haines v. Lone Star Shipbuilding Co., supra.

Pa. R. C. P. 1285, relating to fraudulent debtor's attachment, provides:

"Except as otherwise provided in this chapter, the procedure in an action commenced by a writ of fraudulent debtor's attachment shall be in accordance with the rules relating to foreign attachment."

Pa. R. C. P. 1253, relating to foreign attachment, provides:

"Any person may be made a garnishee. . ."

Pa. R. C. P. 76 defines the word "person" as follows:

" 'person,' includes a corporation, partnership and association, as well as a natural person;"

In commenting on Pa. R. C. P. 1253, Goodrich-Amram § 1253-2 suggests that:

"The general designation of 'any person' in the Rule does not, however, include a sovereign state, its instrumentalities or political subdivisions, or municipalities, or their officers. It is considered against public policy to hamper the functions of government by such a garnishment. Accordingly, unless a statute or the Rules specifically permit it, no garnishment of property or funds held by them in their governmental capacity is permitted."

Defendant, Joseph J. Micco, in his answer to Savlov's petition to dissolve the attachment averred that ". . . the Commonwealth . . . has waived its immunity and consented to the Attachment by the Plaintiff. . . ." We have been unable to find, and our attention has not been directed to, any statute either authorizing an attachment of funds in the possession of the Department of Highways of the Commonwealth

or giving defendant, Micco, the power to waive the Commonwealth's immunity or to consent to the attachment.

We reluctantly conclude, for the reason set forth above, that the fraudulent debtor's attachment writ issued by plaintiff attaching funds in the possession of the Department of Highways of the Commonwealth of Pennsylvania must be dissolved.

Accordingly, we make the following

### ORDER

And now, August 12, 1969, the fraudulent debtor's attachment writ issued by plaintiff attaching funds in the possession of the Department of Highways of the Commonwealth of Pennsylvania is dissolved. The prothonotary is directed to enter this order nisi and to notify the parties of these proceedings or their counsel forthwith. If no exceptions are filed within 20 days after the entry of this order nisi, a final order will be entered as of course. Costs to be paid by plaintiff.